JAMES H. NELMS, plaintiff in error, *vs.* CLARK & MORGAN, defendants in error.

(BY TWO JUDGES.) Where a mill was erected in 1866, and used in the ordinary manner since, until 1871, and a bill is filed to enjoin the mill-owner from allowing the ebb and flow of the water below the mill, caused by the usual stopping and opening of the gate, on the ground that it produces sickness in the neighborhood, with special damage to the plaintiff, and it appears, by affidavits, that there is much conflict of testimony, as to the fact of the damage, and as to the ebb and flow be *-*ing the cause of the sickness, it is no abuse of the discretion of the Court if he refuse the injunction until the facts are passed upon by a jury. 27th February, 1872.

Injunction. Nuisance. Before Judge CLARK. Sumter Superior Court. October, 1871.

Nelms averred as follows: He had for ten years owned a plantation, on which was a good and commodious dwelling, within a quarter of a mile of a good mineral spring, belong-

ing to Glass. Nelms' family lived in the dwelling, enjoyed excellent health and fine social intercourse with the many visitors to said springs. In 1867, Clark built a dam across Chattahoochee creek, within a mile and a half of said dwelling, and erected there a grist-mill. Morgan has bought a half interest in the premises, and they are running said mill regularly. Now Nelms' family are very sickly, because of the malaria produced by this dam, and especially by the alternate overflow and drying off of the land below said mill. When the mill runs the land overflows, and when it ceases the surplus water runs off and the sun dries the land below. The health of the neighborhood has been so impaired that visitors no longer visit said springs.

Glass sued Clark & Morgan for damages to the springs, and obtained a verdict for $300 00, but they protected themselves under the Homestead Act from any payment. Nelms also has sued them for damages, but the crowded dockets have prevented him from getting a hearing, and, defendants being insolvent, a verdict will do him no good. He has offered to buy the mill at such a price as disinterested persons would put upon it, but Clark & Morgan refused to sell in that way. He prayed the Chancellor to enjoin Clark & Morgan from further damming up said creek and using said mill.

In answer to a rule to show cause why injunction should not issue, defendants answered that the diseases of Nelms' family, if increased, were due to other causes than said dam and said ebb and flow of the water from the mill ; that twice before injunctions had been refused in this case, and once affirmed by the Supreme Court, etc. They tendered bond for all the damages Nelms would recover in said suit.

On the hearing, very many affidavits were read, pro and con, as to the question of the increased illness of the neighborhood and whether this dam and mill caused it. The Chancellor refused the injunction. That is assigned as error.

C. T. GOODE, for plaintiff in error.

W. A. HAWKINS, for defendant.

Nelms *vs.* Morgan.

McCAY, Judge.

We do not care to go into the question of the *real* rights of the plaintiff in this case, as they may appear on a trial of the issue. The question now is only on the injunction until the hearing. It seems to us that there is nothing in the case to require the harsh remedy of an injunction.

This mill was built in 1866, and has been in use continuously since. It is rather a bold statement to say that a great pressing emergency exists, requiring the immediate application of an injunction, when the evil complained of has been going on for four or five years.

Besides, the injunction asked for is one of very questionable right. To prevent the ebb and flow of this water as complained of, is to stop the mill altogether. Perhaps to tear down the dam. We think Judge Clark was right in refusing such an injunction, until a jury has passed upon the very conflicting testimony that exists as appears by the affidavits. Whether the sickness is caused at all by the ebb and flow, seems to be a matter of opinion, in which the witnesses differ; and it is a well settled practice, that in a case of this kind the Judge ought to wait for the verdict before he applies so harsh a remedy as an injunction.

There are other important questions in this case, but as we, at present, only intend to pass upon the propriety of granting a temporary injunction, we will not discuss them, since, for the reasons given, we think there ought not to be an injunction until the questions made have been tried by a jury.

Judgment affirmed.